Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
Tel: 415-217-2000
Fax: 415-217-2040
pcort@earthjustice.org

*Local Counsel for Plaintiffs American Lung
Association, et al. (Additional Counsel Listed on
Signature Page)*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN LUNG ASSOCIATION, AMERICAN PUBLIC HEALTH ASSOCIATION, AMERICAN THORACIC SOCIETY, APPALACHIAN MOUNTAIN CLUB, ENVIRONMENTAL DEFENSE FUND, ENVIRONMENTAL LAW AND POLICY CENTER, NATIONAL PARKS CONSERVATION ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, and WEST HARLEM ENVIRONMENTAL ACTION,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT PRUITT, Administrator, United States Environmental Protection Agency, in his official capacity,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

1.      All areas of the country are legally entitled to healthy, clean air. Not all areas have it. Plaintiffs American Lung Association, American Public Health Association, American Thoracic Society, Appalachian Mountain Club, Environmental Defense Fund, Environmental Law and Policy Center, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, and West Harlem Environmental Action bring this action for declaratory judgment and injunctive relief to compel Defendant Scott Pruitt ("Administrator" or "Defendant"), in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), to carry out his overdue legal obligation to officially identify those areas of the country with dangerous levels of ground-level ozone air pollution, a necessary step toward bringing those areas into compliance with federal clean air standards by legally mandated deadlines.

2.      Ground-level ozone, or smog, seriously harms human health and the environment. At high enough levels, it impairs breathing, inflames lungs, sends people to the hospital, and can even kill. It also harms growing plants and even entire ecosystems. The Clean Air Act requires EPA to establish health- and welfare-based national ambient air quality standards ("ozone standards") to limit the amount of ozone allowed in the outdoor air. Areas with ozone pollution levels that violate the standards must clean up their air, and areas whose emissions contribute to poor air quality in downwind communities must reduce those emissions.

3.      EPA strengthened the ozone standards in 2015 based on an extensive scientific record leading to its recognition that the prior ozone standards were inadequate to protect public health and welfare. The signing of the final rule on October 1, 2015, triggered the Administrator's nondiscretionary duty to "promulgate the designations of all areas" of the country as meeting

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    2

("in attainment of") or not meeting ("in nonattainment of") the standards within two years—*i.e.*, by October 1, 2017. 42 U.S.C. § 7407(d)(1)(B)(i).

4.      This deadline has passed and the Administrator has not yet promulgated designations for all areas of the nation. The areas that have not yet been designated are those that are most polluted, where tens of millions of people live and work. EPA's failure to meet the deadline that Congress prescribed violates the Clean Air Act; thus, Plaintiffs seek both declaratory relief and an order to compel the Administrator to issue designations for all areas forthwith.

## JURISDICTION AND VENUE

5.      This action arises under the Clean Air Act, 42 U.S.C. § 7407(d)(1)(B)(i). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) and 28 U.S.C. §§ 1331 and 1361. This Court may grant the relief Plaintiffs request pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. §§ 2201, 2202, and 1361. Plaintiffs have a right to bring this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(2); 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

6.      By certified letter to the Administrator posted on October 3, 2017, Plaintiffs gave notice of this action as required by the Clean Air Act, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. Part 54.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(e) because a) Plaintiff Sierra Club resides in this district; b) this district is one in which Defendant EPA resides and performs its official duties; and c) a substantial part of the events and omissions giving rise to this claim has occurred and is occurring in this district because EPA's failure to act as complained of herein threatens the health and welfare of district residents, including members of Plaintiffs (as further detailed herein), and because EPA's Regional Office in San Francisco, California, has a substantial role in implementing the EPA duties at issue in this case.

8.      Pursuant to Civil L.R. 3-2(c), (d), this case is properly assigned to the San Francisco or Oakland Division of this Court because Plaintiff Sierra Club resides in Oakland, California, and Defendant EPA resides in San Francisco, California.

## PARTIES

9.      Plaintiff **American Lung Association** is a corporation organized and existing under the laws of Maine. ALA is a national nonprofit organization dedicated to a world free of lung disease and to saving lives by preventing lung disease and promoting lung health. ALA's Board of Directors includes pulmonologists and other health professionals.

10.     Plaintiff **American Public Health Association** is an organization incorporated in Massachusetts, and has members from all fields of public health. Its issues include those affecting personal and environmental health and pollution control, chronic and infectious diseases, and health equity.

11.     Plaintiff **American Thoracic Society** is an international, non-profit medical-professional organization organized and existing under the laws of the State of New York. Its members protect public health by preventing and treating respiratory disease, critical care illness, and sleep-disordered breathing through research, education, care, and advocacy.

12.     Plaintiff **Appalachian Mountain Club** is a corporation organized and existing under the laws of the Commonwealth of Massachusetts. It is a regional nonprofit organization dedicated to promoting the protection, enjoyment, and understanding of the mountains, forests, waters, and trails of the Northeast and Mid-Atlantic Outdoors.

13.     Plaintiff **Environmental Defense Fund** is a national nonprofit corporation organized and existing under the laws of the State of New York. It links science, economics, and law to create

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

innovative, equitable, and cost-effective solutions to society's most urgent environmental problems.

14.     Plaintiff **Environmental Law and Policy Center** is a nonprofit corporation incorporated in and operating under the requirements of the State of Illinois. It is a legal advocacy organization dedicated to improving environmental quality and protecting natural resources in the Midwest and Great Plains states.

15.     Plaintiff **National Parks Conservation Association** is a national nonprofit corporation organized and existing under the laws of the District of Columbia. It is dedicated to protecting and enhancing America's National Parks for present and future generations.

16.     Plaintiff **Natural Resources Defense Council** is a national nonprofit corporation organized and existing under the laws of the State of New York that is dedicated to improving the quality of the human environment and protecting the nation's endangered natural resources.

17.     Plaintiff **Sierra Club** is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. It is dedicated to the protection and enjoyment of the environment.

18.     Plaintiff **West Harlem Environmental Action** is a corporation organized and existing under the laws of New York. Founded in 1988, it is a Northern Manhattan community-based organization whose mission is to build healthy communities by assuring that people of color and/or those with low income participate meaningfully in the creation of sound and fair environmental health and protection policies and practices.

19.     Collectively, Plaintiffs have over two million members, with members living, working, and engaging in outdoor activities in all 50 states and Washington, DC.

20.     Defendant Scott Pruitt is the Administrator of the EPA. In that role, he is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established therein. Administrator Pruitt is sued in his official capacity.

### FACTUAL BACKGROUND: OZONE

21.     Ozone, the main component of smog, is a corrosive air pollutant that inflames the lungs and constricts breathing, and likely kills people. *See* 80 FR 65,292, 65,308/3-09/1 (Oct. 26, 2015); EPA, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants* 2-20 to -23 tbl.2-1 (EPA-HQ-OAR-2008-0699-0405, Feb. 2013) ("ISA"). It causes and exacerbates asthma attacks, emergency room visits, hospitalizations, and other serious health harms. *E.g.*, EPA, *Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards* 3-18, 3-26 to -29, 3-32 (EPA-HQ-OAR-2008-0699-0404, Aug. 2014) ("PA"); ISA 2-16 to -18, 2-20 to -24 tbl.2-1. Ozone-induced health problems can force people to change their ordinary activities, requiring children to stay indoors and forcing people to take medication and miss work or school. *E.g.*, PA 4-12.

22.     Ozone can harm healthy adults, but others are more vulnerable. *See* 80 FR 65,310/1-3. Because their respiratory tracts are not fully developed, children are especially vulnerable to ozone pollution, particularly when they have elevated respiratory rates, as when playing outdoors. *E.g.*, PA 3-81 to -82. People with lung disease and the elderly also have heightened vulnerability. *See* 80 FR 65,310/3. People with asthma suffer more severe impacts from ozone exposure than healthy individuals do and are more vulnerable at lower levels of exposure. *Id.* 65,311/1 n.37, 65,322/3.

23.     Ozone also damages vegetation and forested ecosystems, causing or contributing to widespread stunting of plant growth, tree deaths, visible leaf injury, reduced carbon storage, and reduced crop yields. PA 5-2 to -3; ISA 9-1. The damage includes tree-growth losses reaching 30-

50% in some areas, and widespread visible leaf injury, including 25-37% of sites studied in just one state. PA 5-13; ISA 9-40. By harming vegetation, ozone can also damage entire ecosystems, leading to ecological and economic losses. 80 FR 65,370/1-2, 65,377/3.

## STATUTORY AND REGULATORY BACKGROUND

24.     Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). One "primary goal" is "pollution prevention." *Id*. § 7401(c). Congress found the Act to be necessary in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare." *Id*. § 7401(a)(2).

25.     Central to the Act is the requirement that EPA establish national ambient air quality standards for certain widespread air pollutants that endanger public health and welfare, referred to as "criteria pollutants." *Id*. §§ 7408-7409. One criteria pollutant is ground-level ozone. *See* 40 C.F.R. §§ 50.9, 50.10, 50.15, 50.19.

26.     The national ambient air quality standards establish allowable concentrations of criteria pollutants in ambient air. Primary standards protect public health, including that of sensitive populations such as asthmatics, children, and the elderly. 42 U.S.C. § 7409(b)(1). Secondary standards protect public welfare, including protection against damage to animals, crops, vegetation, and buildings. *Id*. §§ 7409(b)(2), 7602(h). EPA must review and, as appropriate, revise these standards at least every five years. *Id*. § 7409(d)(1).

27.     After EPA sets or revises a standard, the implementation process begins. Within one year of the standards' promulgation, the states and Tribes provide EPA recommendations for initial area designations, which classify all areas within the state or tribal land as "nonattainment,"

1    "attainment," or "unclassifiable" under the standards. *Id*. § 7407(d)(1)(A). A nonattainment area

2    is one that does not meet the standards or that "contributes to ambient air quality in a nearby area

3    that does not meet" the standards. *Id*. § 7407(d)(1)(A)(i). An attainment area is an area that meets

4    the standards and does not contribute to air quality in a nearby area that does not meet them. *Id*.

5    § 7407(d)(1)(A)(ii). An "unclassifiable" area is "any area that cannot be classified on the basis of

6    available information as meeting or not meeting" the standard, and is treated for regulatory

7    purposes as an attainment area. *Id.* §§ 7407(d)(1)(A)(iii), 7471.

8    28.    Then, "as expeditiously as practicable, but in no case later than" two years after

9    promulgating or revising a standard, EPA "shall promulgate the designations of all areas (or

10   portions thereof) submitted" by states and Tribes. *Id*. § 7407(d)(1)(A)-(B); *see also id*.

11   §§ 7601(d)(1), 7602(d). In promulgating designations, EPA may modify a state or Tribe's

12   recommendations, but if EPA intends to do so, it must so notify the state or Tribe at least 120

13   days in advance of promulgating the designation. *Id*. § 7407(d)(1)(B)(ii). If a state or Tribe does

14   not submit recommendations for an area, EPA still must promulgate a designation for that area.

15   *See id.*

16   29.    A nonattainment designation triggers requirements for states to ensure that air quality in

17   nonattainment areas will attain ozone standards by specified deadlines. *Id*. §§ 7410(a), (c), 7502;

18   *see also id*. §§ 7511-7511f (provisions specific to ozone nonattainment areas). Among the

19   protections is a preconstruction permitting program, which requires large new factories and

20   power plants in nonattainment areas to operate state-of-the-art pollution controls and to secure

21   reductions in air pollution from other sources sufficient to more than offset the new pollution

22   they will introduce. *Id*. §§ 7503, 7511a. Each state must adopt a "state implementation plan" that

23   includes all the protections Congress required for nonattainment areas and any specific measures

the state determines should be implemented to address local sources of air pollution contributing to elevated ozone levels. *Id*. § 7410(a)(2)(I).

30.     The requirements—and deadlines—for states to adopt the specific programs Congress mandated to control harmful emissions in nonattainment areas depend on the areas being designated nonattainment. *See, e.g.*, *id*. §§ 7502(b), (c), 7503.

31.     Simultaneously with their designation, ozone nonattainment areas must be classified based on the severity of their ozone pollution levels. *Id*. § 7511(a)(1) tbl.1. The higher the classification, the longer the area has to come into attainment, but the more stringent the controls it must adopt. If an area fails to attain on time, EPA must reclassify it to a higher classification, triggering stronger pollution control requirements.

## FACTUAL BACKGROUND: 2015 OZONE STANDARD REVISION AND EPA'S FAILURE TO PROMULGATE DESIGNATIONS

32.     EPA revised the ozone standards most recently on October 1, 2015 ("the 2015 standards"), strengthening them by tightening the maximum 8-hour level of ozone allowed in the ambient air to 70 parts per billion (ppb), down from the 75 ppb allowed under the prior version of the standards ("the 2008 standards"). 80 FR 65,292/1, 65,452/2; 73 FR 16,436, 16,436/1 (2008).

33.     EPA made this revision after its lengthy and detailed review process demonstrated that the 2008 standards were inadequate to protect public health and welfare. 80 FR 65,342/2-47/1, 65,389/1-90/2. Important parts of the extensive record showed that healthy young adults experienced adverse health effects with ozone exposures at levels allowed by the 2008 standards and linked ozone levels allowed by those standards to hospital visits, deaths, and other serious health harms. *Id*. 65,343/1-44/3, 65,346/2-3. In a 15-city study, EPA estimated that tens of thousands of children would still face dangerous ozone exposures even after the 2008 standards

were met. *Id.* 65,344/3-47/1. EPA's independent scientific advisors likewise unanimously found the 2008 standards were not strong enough to protect public health and welfare. *Id.* 65,346/2, 65,381/3.

34.    EPA's revision of the standards on October 1, 2015 meant its mandatory deadline for issuing designations was October 1, 2017. *See* 42 U.S.C. § 7407(d)(1)(B)(i).

35.    All the impacted states and Tribes submitted designation recommendations to EPA well in advance of this deadline. *See* www.epa.gov/ozone-designations/2015-ozone-standards-state-recommendations; www.epa.gov/ozone-designations/2015-ozone-standards-tribal-recommendations. They did so with ample guidance from EPA regarding what kind of information it needed to make final designations. *See, e.g.*, Memorandum on Area Designations for the 2015 Ozone National Ambient Air Quality Standards, from Janet McCabe, Acting Ass't Adm'r, to Reg'l Adm'rs (Feb. 25, 2016).

36.    On June 28, 2017, EPA purported to extend its ozone designation deadline by one year. 82 Fed. Reg. 29,246 (June 28, 2017). After multiple public health and environmental organizations (including Plaintiffs) and several states sued EPA over the extension, EPA issued a notice formally withdrawing it. 82 Fed. Reg. 37,318 (Aug. 10, 2017). Thus, the mandatory deadline for issuing designations remains October 1, 2017. *See* 42 U.S.C. § 7407(d)(1)(B)(i).

37.    By its October 1, 2017 deadline, EPA had not promulgated a single ozone designation under the 2015 standards for any area in the country. At no point did EPA notify any state or Tribe that it intended to modify any of their recommended designations pursuant to § 7407(d)(1)(B)(ii).

38.     On November 6, 2017, EPA issued attainment and unclassifiable designations for some areas of the country, but no <u>nonattainment</u> designations. 82 FR 54,232, 54,235/2 (Nov. 16, 2017) (signature date is November 6, 2017).

39.     As of the date of this filing, EPA has not issued designations under the 2015 standards for all areas of the nation by the October 1, 2017, deadline, as required by the Clean Air Act. EPA also has not notified any state or Tribe that it intends to modify any of their recommended designations. Nor has EPA attempted to extend its now-passed deadline.

40.     More than 100 million of the roughly 323 million people in the United States live in the hundreds of counties that remain as of this date without designations under the 2015 standards, including urban areas like Los Angeles, New York City, Chicago, Washington-Baltimore, Denver, Houston, San Antonio, Detroit, Cincinnati, Philadelphia, Atlanta, and Oakland, where ozone pollution is particularly severe. *See* 82 FR 54,235-87.

## PLAINTIFFS' INJURIES

41.     Plaintiffs' members include individuals who live, work, travel, and/or engage in recreational activities in areas where air quality violates the 2015 ozone standards, including areas state governors themselves have recommended be designated nonattainment, but for which EPA has failed to make ozone designations in the timeframe required by 42 U.S.C. § 7407(d)(1)(B)(i), including in cities like Baltimore, Chicago, Philadelphia, and San Antonio.

42.     The acts and omissions of EPA alleged herein harm Plaintiffs' members by prolonging air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from ozone pollution in places where they live, work, travel, and/or recreate. Indeed, ozone levels that exceed the 2015 standards can exacerbate Plaintiffs' members' health problems such as asthma and chronic

obstructive pulmonary disease, causing physical problems that force them to limit activities that they would otherwise be able to do and enjoy.

43.    The acts and omissions of EPA alleged herein also harm Plaintiffs' members' welfare interests—including their recreational, aesthetic, educational, and professional interests— because their reasonable concerns about the health effects of their ozone exposure diminish their enjoyment of activities they previously enjoyed or would like to continue to engage in, and of areas they previously enjoyed or would like to continue to use.

44.    The acts and omissions of EPA alleged herein further harm Plaintiffs' members' welfare interest in using and enjoying the natural environment in areas that do not meet the 2015 standards. Elevated levels of ozone damage plant life and natural ecosystems, thus harming Plaintiffs' members' recreational and aesthetic interests. Ozone damage to vegetation can lead to wildlife avoidance of certain areas, as well as a reduction in biodiversity or other changes to a local community's ecosystem, making it more difficult for Plaintiffs' members to observe, fish, cultivate, study, research, or write about wildlife, plants, or ecosystems.

45.    The acts and omissions of EPA alleged herein further deprive Plaintiffs and their members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to, the right to judicially challenge final ozone designations adversely affecting their members, the right to enforce requirements of the Act for preparation and implementation of plans to remedy violations of the 2015 ozone standards in nonattainment areas and prevent violations in attainment areas, and the right to comment on and judicially challenge such plans.

46.    The EPA acts and omissions alleged herein further injure Plaintiffs and their members by depriving them of information to which they are entitled by law, including, but not limited to,

EPA's published identification of each area in the nation as attainment, nonattainment, or unclassifiable. If Plaintiffs had access to such information, they would use it to, among other things: educate their members and the public about the scope of ozone standards violations nationwide, including identification of areas that violate the 2015 ozone standards and areas that meet the standards; advocate for adoption of adequate measures to bring nonattainment areas into compliance with the standards and prevent significant deterioration of air quality in attainment areas; advocate for appropriate action by EPA to determine whether unclassifiable areas meet or do not meet the standards; and more efficiently target Plaintiffs' actions to promote effective implementation of the 2015 ozone standards. Such information would also assist Plaintiffs' members in determining whether they are exposed to ozone levels that violate health standards and in taking action to protect themselves and their families from ozone pollution. The acts and omissions complained of herein deprive Plaintiffs and their members of the benefits of such information and thus cause them injury.

47.    EPA's failure also hampers Plaintiffs' ability to perform certain programmatic functions essential to their missions, such as ensuring that states put in place the public health and environmental protections that accompany nonattainment designations, and educating the public about these protections.

48.    Accordingly, the health, recreational, aesthetic, procedural, informational, and organizational interests of Plaintiffs and their members have been and continue to be adversely affected by the acts and omissions of EPA alleged herein.

49.    A court order requiring EPA to promptly promulgate designations for all areas, as the law requires, would redress Plaintiffs' and Plaintiffs' members' injuries.

**CLAIM FOR RELIEF**

50.     The allegations of all foregoing paragraphs are hereby incorporated as if set forth fully herein.

<u>Violation of the Clean Air Act</u>

51.     EPA's deadline for promulgating initial area air quality designations for all areas of the country under the 2015 ozone standards was October 1, 2017.

52.     The Administrator failed to promulgate designations for all areas in the country by that date, as required by 42 U.S.C. § 7407(d)(1)(B)(i).

53.     As of the filing of this Complaint, EPA has not promulgated designations for all areas in the country.

54.     This constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(2), and thus a violation of the Act. EPA's violations are ongoing, and will continue unless remedied by this Court.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that EPA's failure to timely promulgate area designations for all areas under the 2015 National Ambient Air Quality Standards for ozone by the deadline required by 42 U.S.C. § 7407(d)(1)(B)(i) constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of 42 U.S.C. § 7604(a)(2);

(2) Enjoin the Administrator from continuing to violate the above-described nondiscretionary duty;

(3) Order the Administrator to promulgate area designations for all areas of the country under the 2015 National Ambient Air Quality Standards for ozone forthwith;

(4) Retain jurisdiction to ensure compliance with the Court's decree;

(5) Award Plaintiffs the costs of this action, including attorneys' fees; and,

(6) Grant such other relief as the Court deems just and proper.

DATED:          December 4, 2017

Respectfully Submitted,

/s/ Paul Cort
Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
Tel: 415-217-2000
Fax: 415-217-2040
pcort@earthjustice.org

Laura Dumais, DC Bar No.1024007 (*pro hac vice pending*)
Seth L. Johnson, DC Bar No.1001654 (*pro hac vice pending*)
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, DC 20036
Tel: 202-667-4500
Fax: 202-667-2356
ldumais@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Plaintiffs American Lung Association, American Public Health Association, American Thoracic Society, Appalachian Mountain Club, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, and West Harlem Environmental Action*

Peter Zalzal, CO Bar No. 42164 (*pro hac vice pending*)
Rachel Fullmer, CO Bar No. 49868 (*pro hac vice pending*)
Environmental Defense Fund
2060 Broadway
Suite 300
Boulder, CO 80302
Tel: 303-447-7214
Fax: 303-440-8052
pzalzal@edf.org
rfullmer@edf.org

*Counsel for Plaintiff Environmental Defense Fund*

Scott Strand, MN Bar No. 0147151 (*pro hac vice pending)*
Environmental Law and Policy Center
15 South Fifth Street
Suite 500
Minneapolis, MN 55402
Tel: 612-386-6409
sstrand@elpc.org

*Counsel for Plaintiff Environmental Law and Policy Center*