UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OZONE DESIGNATION LITIGATION | Case No. 17-cv-06900-HSG<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 11;<br><br>Dkt. No. 43, Case No. 4:17-cv-06936-HSG |

On December 4, 2017, a coalition of environmental and health organizations ("NGO Plaintiffs") filed suit against Scott Pruitt in his official capacity as the Administrator of the United States Environmental Protection Agency ("EPA"). *See* Dkt. No. 1 ("NGO Compl."). That same day, NGO Plaintiffs filed a motion for summary judgment. *See* Dkt. No. 11 ("NGO Mot."). On December 15, 2017, the Court related that action to *California v. Pruitt*, Case No. 4:17-cv-06936-HSG. In *California v. Pruitt*, fifteen states ("State Plaintiffs") asserted virtually identical claims against the Administrator and EPA (collectively, "Defendants"). *See* Dkt. No. 1 ("State Compl."), Case No. 4:17-cv-06936-HSG.

On December 29, 2017, State Plaintiffs filed a motion for summary judgment. Dkt. No. 43 ("State Mot."), Case No. 4:17-cv-06936-HSG. On January 19, 2018, Defendants opposed the motions submitted by NGO and State Plaintiffs (collectively, "Plaintiffs"). Dkt. No. 40 ("Opp."). On January 23, 2018, the Court granted State Plaintiffs' request to consolidate the actions. *See* Dkt. No. 41. NGO Plaintiffs replied to Defendants' opposition on January 26, 2018. Dkt. No. 42 ("NGO Reply"). State Plaintiffs replied on January 31, 2018. Dkt. No. 43 ("State Reply"). On February 22, 2018, the Court heard argument on the motions. *See* Dkt. No. 63.

After carefully considering the parties' arguments, the Court **GRANTS** Plaintiffs' motions

for summary judgment. There is no dispute as to liability: Defendants admit that the Administrator violated his nondiscretionary duty under the Clean Air Act ("CAA") to promulgate by October 1, 2017 initial area air quality designations under the 2015 national ambient air quality standards ("standards" or "NAAQS") for ozone. *See* NGO Mot. at 13; Opp. at 2. The remaining inquiry pertains to the appropriate equitable remedy, which the Court crafts in its discretion.[1]

## I. SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must

---

[1] Parts I and II of this order set forth the relevant statutory and factual background.

1   also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at

2   325. In either case, the movant "may not require the nonmoving party to produce evidence

3   supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

4   *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial

5   burden of production, the nonmoving party has no obligation to produce anything, even if the

6   nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

7   "If, however, a moving party carries its burden of production, the nonmoving party must

8   produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party

9   "must do more than simply show that there is some metaphysical doubt as to the material facts."

10  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with

11  reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91

12  F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its

13  claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S.

14  at 323.

### B.   DISCUSSION

For purposes of liability, the CAA's operative provision states:

> Upon promulgation or revision of a national ambient air quality standard, the Administrator shall promulgate the designations of all areas (or portions thereof) submitted under subparagraph (A) as expeditiously as practicable, but in no case later than 2 years from the date of promulgation or the new or revised national ambient air quality standard. Such period may be extended for up to one year in the event the Administrator has insufficient information to promulgate the designations.

42 U.S.C. § 7407(d)(1)(B)(i). The parties agree that EPA triggered the statutory compliance period when it last revised the ozone NAAQS on October 1, 2015. *See id.*; NGO Mot. at 5, 7. States were then obligated to submit to EPA recommended area designations within one year. *See* 42 U.S.C. § 7407(d)(1)(A). EPA can modify a state's recommended designation, but must first provide the state with 120 days' notice. *Id.* § 7407(d)(1)(B)(ii). If the state's governor does not then submit the modified designation, "the Administrator shall promulgate the designation that the Administrator deems appropriate for any area (or portion thereof) not designated by the state." *Id.*

3

If the state subsequently submits a different designation, the Administrator "shall act on those designations in accordance with the procedures. . . relating to redesignation[.]" *Id.* § 7407(d)(1)(B)(iii). As to redesignation,

> [T]he Administrator may at any time notify the Governor of any State that available information indicates that the designation of any area or portion of an area within the State or interstate area should be revised. In issuing such notification, which shall be public, to the Governor, the Administrator shall provide such information as the Administrator may have available explaining the basis for the notice.

*Id.* § 7407(d)(3)(A). Redesignation determinations are made "on the basis of air quality data, planning and control considerations, or any other air quality-related considerations the Administrator deems appropriate[.]" *See id.* § 7407(d)(3)(A), (D). The CAA sets forth discrete compliance deadlines for redesignation. *Id.* § 7407(d)(3)(B)–(C).

In addition, a state can independently commence the redesignation process. *See id.* § 7407(d)(3)(D) ("The Governor of any State may, on the Governor's own motion, submit a revised designation of any area or portion within that state."). Should a state make a request for revision, then "the Administrator shall approve or deny such redesignation within 18 months of receipt of a complete State redesignation submittal." *Id.*

Defendants do not dispute that the Administrator violated section 7407(d)(1)(B)(i) by failing to promulgate by October 1, 2017 initial area air quality designations under the 2015 ozone NAAQS for all areas of the country. *See* Opp. at 2. Thus, summary judgment in favor of Plaintiffs is appropriate. *See Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52 (D.D.C. 2006) ("Because defendant does not contest the issue of liability, the entry of summary judgment is appropriate, and it remains only for the Court to fashion an appropriate equitable remedy."); *Am. Lung Ass'n v. Browner*, 884 F. Supp. 345, 346 (D. Ariz. 1994) ("Summary judgment is appropriate where, as here, it remains only for the Court, acting in its discretion, to fashion an equitable remedy.").

//
//
//

## II. REMEDY

### A. LEGAL STANDARD

The Court has "broad latitude" to fashion an equitable remedy other than injunctive relief. *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994). Defendants carry "a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible." *Am. Lung Ass'n*, 884 F. Supp. at 347; *see Delaney v. E.P.A.*, 898 F.2d 687, 691 (9th Cir. 1990) ("When Congress has explicitly set an absolute deadline, congressional intent is clear . . . The EPA cannot extract leeway from a statute that Congress explicitly intended to be strict."). It is the Court's role to "separate justifications grounded in the purposes of the [statute] from the footdragging efforts of a delinquent agency." *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974).

In *Train*, the D.C. Circuit identified two categories of constraints that can excuse untimely agency action. *Id.* The first set of constraints comprise "budgetary commitments and manpower demands" required to meet a deadline, and any such demands must be "beyond the agency's capacity or . . . unduly jeopardize the implementation of other essential programs." *Id.* at 712. The second set of constraints are "methodological" limitations that prevent an agency from giving "meaningful consideration to the technical intricacies" underlying the regulations to be issued. *Id.* at 712–13. With respect to this second constraint, "[e]xcuses for delay must go beyond the general proposition that further study and analysis of materials will make final agency action better, because further study will always make everything better, and it is always easier to do something with more rather than less time." *Am. Lung Ass'n*, 884 F. Supp. at 347. To forbear the issuance of a mandate, the Court must be "convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Train*, 510 F.2d at 713.

### B. DISCUSSION

Defendants contend that they are acting expeditiously to implement the 2015 ozone NAAQS. Opp. at 2. Defendants request that the Court order "EPA to promulgate all of the remaining area designations by April 30, 2018, except for the eight counties that comprise the San

Antonio, Texas area." Opp. at 3, *see* 83 Fed. Reg. 651 (Jan. 5, 2018) (announcing that EPA "intends to complete designations for all of the areas addressed in the responses to the states and tribes no later than April 30, 2018, and that "[t]his would complete the designation process for the 2015 Ozone NAAQS"); *see also* Dkt. No. 40-1 ("Wehrum Decl.") ¶ 6. For the San Antonio area, Defendants argue that the Court should direct EPA to promulgate a designation by August 10, 2018. Defendants contend that the April and August deadlines respectively represent the earliest practicable dates by which EPA can issue the remaining area designations. *See* Opp. at 7. As to implementation, Defendants request that the Court give EPA thirty to sixty days following promulgation to make any designations effective. *See id.* at 14; Wehrum Decl. ¶¶ 45–46.

NGO Plaintiffs agree with Defendants that EPA must implement by April 30, 2018 all remaining area designations, except those governing the San Antonio area. *See* Dkt. No. 37 ("NGO Admin. Mot.") at 2; NGO Reply at 2. For San Antonio, NGO Plaintiffs request that the Court direct Defendants, within seven days of the Court's equitable order, to send Texas "a 120-day notice detailing the designations EPA intends to make for the San Antonio area, and promulgate designations by 120 days later." NGO Reply at 8. NGO Plaintiffs "further request" that the Court specify that EPA make the designations "effectively immediately upon promulgation." *See id.* at 9–11.

State Plaintiffs' request differs slightly from that of NGO Plaintiffs. *See* State Reply at 1–2, Dkt. No. 43-1. State Plaintiffs seek an order directing Defendants to (1) complete designations by April 30, 2018 for areas where EPA has proposed modifying a state or tribe's recommended designation; (2) immediately promulgate designations for those areas where states and EPA agree—i.e. where no change to a designation is anticipated or forthcoming; (3) take action with respect to the San Antonio area within seven days of the Court's order, either by promulgating designations directly *or* by issuing a letter of EPA's intent to modify the state's designation; and (4) make designations effective immediately for all areas. *See id.*

In view of the parties' requests, there are three remedy-based issues to address. Those issues respectively pertain to the date by which Defendants must (1) promulgate designations for all areas, excluding the San Antonio area; (2) promulgate a designation for the San Antonio area;

6

1    and (3) make all designations effective.

        **i.    Defendants must promulgate by April 30, 2018 designations for all areas, excluding the San Antonio area**

As discussed, Defendants and NGO Plaintiffs agree that an April 30, 2018 promulgation deadline is appropriate for all areas excluding the San Antonio area. *See* NGO Reply at 2. State Plaintiffs disagree, and argue that Defendants cannot justify further delaying designating areas where EPA does not intend to modify a state-recommended designation. State Reply at 2. Defendants argue that EPA cannot promulgate these designations any faster, in part because the agency has already solicited public comments on the recommended designations. Opp. at 8. According to Defendants, April 30, 2018 is the earliest date by which EPA can "diligently respond to comments and issue final designations." *Id.* at 9, 11; Wehrum Decl. ¶¶ 26–29 (outlining the steps EPA will take after it receives comments, including consolidating comments, drafting a response, and preparing a final Federal Register notice).

Under the circumstances, Defendants are acting expeditiously to promulgate the remaining non-San Antonio area designations. Defendants' April 30 deadline requires the Administrator to fulfill his duty less than two months from the date of this order. State Plaintiffs are correct that substantive adequacy typically must cede to expediency when the Administrator has violated a non-discretionary duty. *See, e.g.*, *Sierra Club v. Gorsuch*, 551 F. Supp. 785, 788–89 (N.D. Cal. 1982). But courts also recognize pragmatic considerations in tailoring the appropriate remedy for non-compliance. *See Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 58 (D.D.C. 2006) (finding that the plaintiff's proposed schedule was "simply too compressed" to afford a "reasonable possibility of compliance," and therefore issuing a "slightly more relaxed" regulatory schedule); *Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 700 F. Supp. 173, 181 (S.D.N.Y. 1988) (recognizing "the necessity of dealing with [compliance] issues on a pragmatic basis" and providing the Administrator with "a reasonable period of time" to comply with a mandatory statutory duty); *Sierra Club v. Thomas*, 658 F. Supp. 165, 175 (N.D. Cal. 1987) ("Nevertheless, since the purpose of this order is to protect the public interest and not to punish EPA, the Court would extend EPA's time to compensate for its footdragging if it were convinced

that doing so was necessary for the promulgation of workable regulations.").

Similarly, State Plaintiffs' authorities can be distinguished based on EPA's self-imposed April 30 compliance timeline. *See* State Reply at 2–3. For instance, in *Communities for a Better Env't v. U.S. E.P.A.,* EPA sought "a period of five years and one month from the initial call for information to complete the review process" for carbon monoxide ("CO") NAAQS. No. C 07-03678 JSW, 2008 WL 1994898, at *5 (N.D. Cal. May 5, 2008). The court concluded that "it would not be impossible for the EPA to complete the NAAQS review and revision process for CO. . . forty-four months since EPA initiated the review process by issuing a call for information." *Id.* In ordering EPA to comply with this shorter deadline, the court observed that EPA had previously been rebuffed when it sought to extend its time for compliance "by more than double the statutory period." *Id.* at *2 (citing *Sierra Club,* 551 F.Supp. at 786–87; *Sierra Club v. Thomas,* 658 F.Supp. 165, 170 (N.D. Cal. 1987)).

Not so here. The statutory clock began ticking on October 1, 2015, when EPA last revised the ozone NAAQS. *See* NGO Mot. at 5, 7; 42 U.S.C. § 7407(d)(1)(B)(i). EPA subsequently promulgated area designations for 2,646 counties on November 6, 2017. NGO Mot. at 13. EPA published that rule in the Federal Register on November 16, 2017. *See* 82 Fed. Reg. 54,232. Those attainment and unclassifiable designations became effective two months later, on January 16, 2018. *Id.* For the remaining non-San Antonio designations, Defendants therefore seek a total extension of less than seven months from October 1, 2017, the initial statutory deadline.

In addition, Defendants have shown that it would be impracticable to implement State Plaintiffs' proposal for immediately issuing the remaining designations. *See Train*, 510 F.2d at 713. Though notice and comment was not statutorily required, Defendants represent that the comments EPA has received preclude the agency from distinguishing those state-recommended designations that the agency is likely to modify from those that it will not alter.[2] For example, Defendants explained at oral argument that certain comments pertain to the agency's process for and approach to promulgating area designations. Though State Plaintiffs argue that EPA's history

---

[2] EPA's voluntary notice-and-comment period closed before oral argument, but after the parties completed briefing on the motions. *See* State Reply at 2.

of untimely action casts doubt on Defendants' representation, Plaintiffs have not submitted sufficient factual evidence for the Court to agree.[3] The Court therefore concludes that April 30, 2018 represents an appropriate deadline by which EPA must issue the remaining non-San Antonio area designations.

### ii. Defendants must promulgate final designations for the San Antonio area no later than 127 days from the date of this order

Defendants claim that EPA needs until August 10, 2018 to promulgate a designation for the San Antonio area. *See* Opp. at 12–13. Defendants initially attributed this delay to Texas's September 27, 2017 letter to EPA requesting additional time for the state to provide "information supporting a designation of attainment or unclassifiable for the state." Opp. at 12; *see* Wehrum Decl. ¶ 37. EPA allowed Texas to submit by February 28, 2018 any such additional information, including a revised designation recommendation. *See id.* Defendants now contend that EPA needs until April 12, 2018 to "undertake the technical analysis and internal agency deliberations to determine an intended designation" for the San Antonio counties. *Id.* If EPA then seeks to modify Texas's recommended designation, EPA will issue a 120-day notice letter. *See id.* Defendants indicate that, concurrently with this process, EPA will initiate a discretionary notice-and-comment period to improve the quality of its designation. *See id.* Defendants claim that August 10, 2018 is thus the "earliest EPA can feasibly promulgate the designation." Opp. at 13.

Both NGO and State Plaintiffs dispute EPA's August 10, 2018 deadline. NGO Plaintiffs request that the Court direct Defendants, within seven days of this order, to send Texas "a 120-day notice detailing the designations EPA intends to make for the San Antonio area, and promulgate designations by 120 days later." NGO Reply at 8. So doing would provide Defendants with a 127-day timeline for compliance. NGO Plaintiffs contend that this timeframe is consistent with the CAA's dual mandates of requiring expeditious agency action and providing 120-day notice to states. *See id.*

---

[3] At oral argument, Defendants suggested that EPA could delay promulgating designations past the April 30 deadline depending on the comments received. The Court finds that any such further delay is unacceptable at this stage, and EPA will be held to its promised April 30 deadline.

State Plaintiffs' requested relief differs slightly. State Plaintiffs argue that the Court should require EPA, within seven days of this order, to take one of two actions: "(1) finalize [Texas's] designation or (2) propose a modification to Texas's recommended designation." State Reply at 5. If EPA proposes a modification, State Plaintiffs ask that the Court require the agency to finalize the designation within 120 days of that proposal. *Id.*

Though Plaintiffs differ over the exact form of the Court's order, Plaintiffs agree that EPA's reasons for delay are unwarranted. In addition to EPA's failure to show impracticability, Plaintiffs argue that the basis for Texas's request—to submit information regarding international transport—is not relevant to the designation process, and governed by a discrete section of the CAA. *See* State Reply at 7; 42 U.S.C. § 7509(a). But even if Texas had a legitimate basis for supplementing its recommendation, Plaintiffs contend that EPA never claimed to have *insufficient* information to promulgate a designation for the San Antonio area. *See* State Reply at 7. Texas's information is at best additional, which falls outside the scope of any applicable exception to the CAA's two-year compliance deadline. *See id.* at 6; 42 U.S.C. § 7407(d)(1)(B)(i).

The Court agrees with Plaintiffs. Defendants fail to set forth budgetary, manpower, or technical constraints that would make it impracticable for the agency to promulgate a San Antonio area designation prior to August 10, 2018. *See Train*, 510 F.2d at 712. Defendants admit that they will have in their possession by February 28, 2018 any additional information that Texas submits. Opp. at 12. While EPA claims that it needs until April 12 to consolidate and process this information, Defendants do not provide sufficient detail to justify that date. *See, e.g.*, *Am. Lung Ass'n*, 884 F. Supp. at 347; *Train* 510 F.2d at 713.

Furthermore, EPA's reasoning effectively allows states to drive the agency's timeline for statutory compliance. *See* NGO Reply at 7. The circumstances here are particularly notable: Texas waited until just four days before EPA's deadline to ask the agency for additional time. Though EPA could have declined Texas's request, EPA gave Texas nearly six additional months to provide the agency with more information. Any consequent agency delay is unreasonable. *See Catawba Cty., N.C. v. E.P.A.*, 571 F.3d 20, 51 (D.C. Cir. 2009) (rejecting an "*ad infinitum*" designation process as "inconsistent with the CAA," and finding that "Congress imposed

deadlines on EPA and thus clearly envisioned an end to [that] process").

Defendants, moreover, fail to address why Texas's "international transport" rationale is entitled to EPA's deference. When asked at oral argument, Defendants explained, for the first time, that the agency's tardiness is partly due to processing *timely* submitted information pertaining to the San Antonio area. If that is the case, then Defendants are even harder pressed to explain how EPA acted in the first instance with the "utmost diligence" to meet the CAA's deadline. *See Train*, 510 F.2d at 713. And even if these justifications were legitimate, the Administrator—or Texas—could have used the CAA's redesignation process to revise the San Antonio area designation. *See* State Reply at 3; *see also* 42 U.S.C. § 7407(d)(3). Defendants also do not rebut that any party can administratively petition for review of designations following promulgation. *See* Wehrum Decl. ¶ 30 ("EPA specified in the November 2017 designation action that if a party had any concerns about these designations, they could file an administrative petition for reconsideration."); 82 Fed. Reg. 54,232, 54,233 (Nov. 16 2017).

Based on Defendants' showing, the Administrator cannot wait until August 10, 2018 to promulgate an area designation for San Antonio. As to the specific form of equitable relief, the Court adopts NGO Plaintiffs' 127-day compliance deadline for the San Antonio area. NGO Plaintiffs' request is more concrete at this stage as compared to State Plaintiffs' dual-pronged demand, and is therefore more likely to result in expeditious action by the agency.

    **iii.** **No clear statutory command authorizes the Court to require Defendants to make the designations effective immediately upon promulgation, and Defendants' commitment to make the designations effective within 30 to 60 days of promulgation is reasonable**

Both NGO and State Plaintiffs argue that Defendants need to make all designations effective immediately upon promulgation. *See* NGO Reply at 9–11; State Reply at 7–9. According to Plaintiffs, the CAA's statutory timeline for compliance imposes a duty on Defendants to immediately publish designations in the Federal Register. *See* State Reply at 8 & n.8; NGO Reply at 10; 42 U.S.C. § 7407(d)(2)(A) ("The Administrator shall publish a notice in the Federal Register promulgating any designation under paragraph (1) or (5), or announcing any designation under paragraph (4), or promulgating any redesignation under paragraph (3).")

11

In response, Defendants argue that EPA's duty to promulgate designations within two years does not include a duty to make those designations effective. *See* Opp. at 13. Defendants contrast the statute's lack of a specific effective date with other CAA provisions that contain such dates. *Id.* at 14 ("effective one year after the date of promulgation" (citing 42 U.S.C. § 7476(b)). Defendants represent that, consistent with past practice, EPA will make designations effective within thirty to sixty days of promulgation. *See id.*; Wehrum Decl. ¶¶ 45–46.

Here, the Court agrees with Defendants. The CAA does not set forth a specific date by which the agency must make designations effective. The statute does not expressly equate the Administrator's duty to promulgate with a duty to make designations effective. Plaintiffs fail to present any relevant case law that supports their statutory construction. *See* NGO Reply at 9–11. Instead, binding case law favors the opposite finding. In *WildEarth Guardians v. McCarthy*, the Ninth Circuit recognized from its earlier cases a "clear statement rule in this context":

> When a plaintiff sues the EPA Administrator for failure to perform any act or duty under this chapter which is not discretionary with the Administrator, 42 U.S.C. § 7604(a)(2), we have held that the nondiscretionary nature of the duty must be clear-cut—that is, readily ascertainable from the statute allegedly giving rise to the duty. We must be able to identify a specific, unequivocal command from the text of the statute at issue using traditional tools of statutory interpretation; it's not enough that such a command could be teased out from an amalgamation of disputed statutory provisions and legislative history coupled with the EPA's own earlier interpretation.

772 F.3d 1179, 1182 (9th Cir. 2014) (internal quotations and citations omitted); *see Our Children's Earth Found. v. U.S. E.P.A.*, 527 F.3d 842, 851 (9th Cir. 2008) (construing the Clean Water Act's citizen-suit provision similarly). As in *McCarthy*, the Court cannot identify a clear-cut statutory command that directs the Administrator to make designations effective immediately upon promulgation. To the extent that other CAA provisions could theoretically be delayed by granting Defendants' request, *see* NGO Reply at 9–10, that risk is addressed by EPA's commitment to make designations effective within thirty to sixty days following promulgation. The Court assumes that EPA will meet its stated thirty to sixty day timeline, and would consider whether a further order is necessary if it fails to do so.

12

## III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** NGO Plaintiffs' motion for summary judgment, Dkt. No. 11, State Plaintiffs' motion for summary judgment, Dkt. No. 43, Case No. 4:17-cv-06936-HSG, and enters judgment in favor of Plaintiffs and against Defendants. The terms of the judgment are as follows:

(1) The Court **DECLARES** that Defendant Pruitt, in his official capacity as Administrator of the EPA, has failed to perform a non-discretionary duty imposed by 42 U.S.C. § 7407(d)(1)(B)(i) to promulgate by October 1, 2017 area designations for all areas of the country under the 2015 NAAQS for ozone;

(2) The Court **ORDERS** Defendants to promulgate final designations for all areas of the country except for the eight undesignated counties composing the San Antonio area no later than April 30, 2018; and

(3) The Court **ORDERS** Defendants to promulgate final designations for the San Antonio area no later than 127 days from the date of this order.

The clerk is directed to enter judgment in the lead case only and close that case file. The Court retains jurisdiction to make such orders as may be necessary or appropriate.

**IT IS SO ORDERED.**

Dated: 3/12/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

13